UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DONTE ROLANDO HARRIS,<br>Trust No.37473-083<br>P.O. Box 33 Terre Haute IN 47808<br>Plaintiff | * | CASE NO.16:1012-CKK<br>Civil Rights Complaint<br>28 USC 1331 |
| v. | * | AMENDED COMPLAINT |
| ANGELA P. DUNBAR,<br>STEPHEN COPE<br>CTU DIRECTOR,<br>320 First Street NW<br>Washington D.C. 20534<br>Defendants | * | * JURY DEMAND *<br>Leave to file GRANTED<br>United States District Judge<br>6/29/2017 |

A. INTRODUCTION:

1. COMES NOW, I Donte Rolonda Harris, formally a prisoner held in custody by the Counter Terrorism Unit CTU, in concert with the Bureau of Prisons. Appearing in propria persona before this court, bearing in hand this Civil Rights Complaint Amended from the original, presenting thus under penalty of perjury pursuant to 28 USC 1746; and

B. JURISDICTION:

2. Pursuant to 28 USC 1331, this Court is in possession of original jurisdiction to entertain this matter before it, in respects to the foregoing Federal Question: Does the defendants maintain atonomy to subject the plaintiff to a punitive specialized program without any formal procedural due process; 28 USC 2201, in the event that it is determined by this court that the defendants did not have authority to subject plaintiff to the specialized program, e.g. Communications Management Unit CMU and the CTU without the procedural protections found in the 5th Amendment to the Constitution, as a matter of vindicated right be granted Declaratory Judgment declaring that fact.

RECEIVED
Mail Room
JUN 19 2017
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

C. EXHAUTION OF ADMINISTRATIVE REMEDIES:

3. In accordance with PLRA, plaintiff has exhausted his tri-level administrative remedies in relations to the claims set forth herein, dispite the defendants concerted efforts of consealing all material facts of the nexus between the plaintiff and the CTU. Remedy number is 850063-A1; and

D. PARTIES:

4. Plaintiff is a federal prisoner detained by the FBOP in accordance with 18 USC 3621(b), et seq, and may only be classified, redesignated/designated (desg/redes), transferred, placed, detained by and through Program Statement PS5100.08. The plaintiff is currently located at the U.S. Penitentiary Terre Haute, P.O. Box 33 Terre Haute IN, 47808; and

5. Defendant, Angela P. Dunbar, dba Assistant Director of the Correctional Programs Division (CPD) of the FBOP. She is bound first by the U.S. Constitution, then PS 5100.08 which regulates all FBOP classification of prisoners to ensure that all transfers of FBOP prisoners are within the regulatory authority established in PS5100.08. She is hereby sued in her INDIVIDUAL CAPACITY; and

6. Defendant, Stephen Cope, dba CTU Analyst, and is known to be an employee of the FBOP. He is bound first by the U.S. Constitution, then PS 5265.14 which regulates all FBOP prisoner incoming and out-going legal/special and general mail, and to ensure that the laws and corresponding policies are in compliance. He is hereby sued in his INDIVIDUAL CAPACITY; and

7. Defendant, John Doe, hereinafter the CTU Director. Due to this defendant's absence of any known official duties within the Code of Federal Regulation CFR or any of the previously proposed federal

regulations for the years that the CMU was up for proposal, however this party exist now in PS5214.02 and has effectively participated in the detainment of the plaintiff in the CMU for over 6 years, and is hereeby being sued in his INDIVIDUAL CAPACITY; and

E. CONSTITUTIONAL, STATUTORY AND PROCEDURAL FACTS:

8. Article 5 of the U.S. Consitution: No person shall be subject for the same offence to be put in jeopardy of life or limb, nor be deprived of life liberty, or property without due process of law, Emphisis Added; and

9. 18 USC 3621(b), statutorily authorizes the FBOP to place a prisoner at any available federal penal institution; and

10. 18 USC 4081, Classifcation and treatment of prisoners. The federal penal and correctional institutions shall be so planned and limited in size as to facilitate the developement of an intergrated system which will ensure the proper classification and segregation of federal prisoners according to the nature of the offenses committed; and

11. This developement of this intergrated system which shall ensure the proper classifcation is found under PS5100.08 Inmate Security Designation and Classifcation. See: http//www.bop.gov/policy/progstat/5100.008.pdf; and

12. For any FBOP prisoner to be (Desg/Redes) under PS5100.08, the transferring staff must execute a Request For Transfer/Application For Management Varible EMS409 form, or the transfer can and will not be effectuated by the Designation Sentencing and Computation Center DSCC administrator; and

13. A 324 transfer code 324TC, found under PS5100.08 is a transfer code specifically allotted for a Specialized Program transfer, where either the prisoner must voluntarily concent or be provided with some minimal procedural safeguards prior to the execution of such a specialized program induction; and

14. Pursuant to PS5100.08, an inmate is (Desg/Redes) to a specialized program, the DSCC must assigned the Proper Management Varible in this instance, a specialized program management varible (MGTV) Code "N" was to have been assigned. Based on facts that this code specific code correspondes to a 324TC, that would have limited the plaintiff's extensive duration within the CMU/CTU for only 18 months, not the 6.2 years, as the code "N", under Management Varible Expiration Date (MVED) limits specialized program participation to only 18 months or at the discretion of the Regional Director; and

F. CLAIM ONE. LACK OF PROCEDURAL DUE PROCESS:

15. On or about November 1, 2010, sending institution USP Atwater staff, Joel Zaragoza and Judith Dreher submitted a Memorandum to the FBOP's North Central Regional Director NCR, Michael K. Nalley with the intenton referring the plaintiff to the then PROPOSED unregulated program e.g. CMU/CTU; and

16. On or about November 10, 2010, the above named parties submitted "Inmate Investigation Report' for all purposes of bolstering transfer of plaintiff to the CMU/CTU; and

17. On or about November 18, 2010, the above named Regional Director approved the 324TC, thereby authorizing the transfer of plaintiff to the CMU/CTU; and

18. On or about November 23, 2010, the DSCC administrator and said Regional Director approved the 324TC, finalizing the transfer of plaintiff to the CMU/CTU; and

19. On or about December 20, 2010, the plaintiff was placed in the CMU/CTU, then served a document entitled Notice to Inmate of Transfer to a Communications Management Unit; and

20. Throughout the above given sequence of event, the plaintiff was bereft of any pre-CMU/CTU procedural due process. But was arbitrarily subjected to a specialized program and classified as a special offender pursuant to: (i) Current Offense of Conviction for Bank Robbery, (ii) Use of a Fire Arm in a Crime of Violence, (iii) Conspiracy to Escape Federal Custody, (iv) your incarceration conduct includes, (v) Forging Signatures on a Document intended to defraud a Financial Institution as well as creating other fictitious documents intended to defraud the United States, (vi) attempted to abuse legal mail privileges in order to introduce illegal narcotics into the institution; and

21. The plaintiff was repeatedly denied release from the CTU/CMU or presented with by his jailers any means for due process to contest the defendants regurgitation of past institutional incidents that the plaintiff has thus served all sanctions for, to include but not limited to penalizing once again the plaintiff for action that he was convicted for.

G. CLAIM TWO. PERSONAL LIABILITY

22. Angela P. Dunbar is the authority over the CPD, that includes the Specialized Program CMU/CTU for which the plaintiff administrative liberty interest were effectively suspended for 6 years and 2 months. The plaintiff exhausted his remedies as well as initiating an independant administrative remedy to this defendant in an effort of obtaining a meaningful hearing to substantiate the legality of my detainment within the CMU/CTU. This defendant ignored my remedy by failing to respond, however continued her repetitive yet evading reviews, by publishing a document entitled Review for Continued CMU Designation. Here she has, starting on January 28, 2014

at the Team Reviews issuing her determination for continued CMU/CTU designation by and through the CMU Unit Manager. And said determination is the original assessment for CMU/CTU placement to begain with. Defendant whom have direct authority to approve or deny plaintiffs' confinement within the CMU/CTU, endorsed that the original assessments still exist, purporting that the team reviews are due process hearings and my opportunity to present any evidence. Prior to January 28, 2014 I wasn't offered any known instrument by the defendant promulgating her reasons for such special detainment, therefore the defendant allowed the plaintiff to be subjected to the special conditions that are only found in the CMU/CTU sans any specific procedural due process. On or about June 17, 2016, defendant Dunbar signed an instrument, Review for Continued CMU Designation, concurring with Unit Manager for CMU R. Baskerville and CMU Case Manager G. Burgess that the original CMU/CTU assessments still exist, knowing that the plaintiff has not committed any civil or criminal offense that remotely resemble the offenses that he was subjected to the CMU/CTU for . Defendant Dunbar, allowed and participated in the suppression of the plaintiff's civil rights by repeatedly continuing the plaintiffs special confinment within the CMU/CTU for 6.2 years without any procedual due process, denying the plaintiff an opportunity to protect his liberty interest that exist outside of the parameters of the CMU/CTU sphere; and

H. IDENTIFICATION OF LIBERTY INTEREST

23. The liberty interest that are available to a prisoner outside of the sphere of the CMU/CTU, to include administrative segregation and segregation are as follows: familial contact visits, advancements in economic opportunities (UNICOR), vocational training, public programming e.g. mock job fairs, childrens day, pre-release workshops, recreational opportunities, fair speech, legal/special mail confidentialities, 300 monthly minutes of phone availability, mail not scanned to a Counter Terrorism Unit. This is whats available to prisoners that have not committed any institutional infraction that would preclude the above interest; and

I. IDENTIFICATION OF LIBERTY INTREST IN CMU

24. Familial contact visits (denied), 300 minutes of monthly phone opportunities (denied), economic advancement opportunities (denied), fair speech (denied), legal/special mail confidentialities (denied), public programming (denied). The plaintiff's liberty interest were excised without due process to: visitation behind a glass and monitored by the CTU, 2 phone calls per week predicated upon CTU, e.g. Stephen Cope's approval, legal/special mail reviewed outside of plaintiff's presence thereafter scanned to the CTU for distribution approval to the plaintiff.

25. The every 6 months reviews were nothing more than redundant assessments of whether the original reasons for CMU/CTU placement still exist. From December 20, 2010 proceding through June 15, 2016,, date of last denial, was based on the exact information used on December 20, 2010. Thereby rendering any procedural or substantive due process irrelevant and meaningless, because the 2010 CMU/CTU assessment can never change. Plaintiff endured 6.2 years of special confinement within the condemened former death row unit as a special offender classification without the procedural protections of the MGTV/MVED Code "N", which would've precluded the plaintiff's 6.2 years confined in the CMU/CTU. As such confinement has worked serious alteration in the plaintiffs administration of his conviction and sentence, as such indefinately suspended eligibility for important rehabilitive goals and important internal/external valuable programs. To include, such alterations created by the special offender class constitutes a grevious loss and should've therefor required the basic elements of procedural due process before CMU/CTU placement or shortly after; and

J. CLAIM THREE. PERSONAL LIABILITY

26. Stephen Cope is known to be an employee of the FBOP, yet acts as CTU analyst, to whom is directly assigned to the plaintiff. Prior to the advent of the CMU program statement at PS5214.02, the plaintiff

maintained legal/special mail confidentialities, e.g. allowed only for FBOP staff to assure that there was no contraband or other prohibited content therein. However on April 1, 2015, FBOP staff Katherine Sierveld, whom acts as a legal liason for the CTU informed the plaintiff that he could no longer seal his special/legal mail in front of the mail handling staff, as a direct and proximate result, this granted Stephen Cope unpresidented access to the plaintiff's legal/special mail content outside of plaintiff's presence. As such access arrive in the form: Once mail arrive at the institution, the mail room stamps the back of the legal/special mail envelope with a time stamp, places it in t he CMU/CTU mail bin for CMU staff pick-up. Upon arrival at the CMU, CMU staff then opens legal/special mail and digitally scanns it to Stephen Cope for CTU retention. At CMU mail call, if legal/special mail contents is CTU acceptable, said mail will be delivered to plaintiff. The plaintiff is advising the responding defendants that there existed no policy since the plaintiff's initial placement into the CMU/CTU for 4.4 years, which only substantiate that the plaintiff was never afforded proper notice of what his liabilities would be to include the outright foreclosure of his first and fifth amendment guaranteed rights. All action that were performed by CMU staff on-site adversely against the plaintiff for which plaintiff was advised to contact CTU if remedy was sought, by said on-site CMU staff. On or about May 26, 2011 , Stephen Cope intercepted an outgoing general mail to plaintiff's cousin. The defendant drafted a incident report assuming that the recipient of the letter was a front to contact another inmate in another prison, where such inmate is in fact my cousin, however the plaintiff had no intentions on contacting the incarcerated inmate who happens to be the son of the intended letter recipient. Stephen Cope thus outright denied plaintiff 's rights to associate with his own own family based on his assumption that plaintiff was attempting to circumvent the mail. Defendant Cope

allowed and participated in the suppression of the plaintiff's civil rights by repeatedly continuing to open legal/special mails in the absence of plaintiff, denying the plaintiff's rights of familial association, person whom are non-terrorist or associated with any civil unrest inciters; and

K. CLAIM FOUR. PERSONAL LIABILITY

27. CTU Director, to whom the plaintiff is unaware of this purportedly public official's name, is the Chief of the CTU. Wherein the CTU cannot be identified within the Code of Federal Regulations, yet acts in the capacity as a federal government component. Prior to the plaintiff's placement into the CMU/CTU, on or about October 27, 2010 the plaintiff after being informed by BOP staff that he was considered a candidate to be subjected to the CMU/CTU, the plaintiff filed his administrative remedy to the warden. In turn the responded that the plaintiff was not eligible for CMU placement and therefore was denied, and plaintiff would be transferred under a 323 Close Supervision Transfer. As the facts has been set-out above herewith, as the director of this CTU was advised by the plaintiff that he was not afforded any procedural due process prior to being subjected to the special condition that only exist in the CMU for which the CTU is and acts as the warden over. Prior to April 1, 2015, date of the activation of PS5214.02, you were aware that there existed no specific policy for the CMU/CTU, however eventhough CMU was published under proposed regulations several times, the CTU, it's directors or analyst were not included in the proposal for the plaintiffs comments, to include the American public. Then on April 1, 2015, in accordance with your PS5214.02, which is the only place where CTU is announce, and states in part: Review: The CTU completes the necessary CMU referral documents including Notice To Inmate of Transfer To A CMU (BP-A0944) and forwards a copy to the Office of General Counsel; Decision: After OGC completes its review of the referral, the packet is returned to the CTU, which then forards it to the Assistant Director of Correctional Programs Divisions (CPD).

As stipulated in the recently published FBOP Programe Statement PS5214.02, the CTU Director is personally involved in the plaintiff's induction into the CMU without providing any procedural protection of avoiding the special conditions that only exist in the CMU/CTU. Defendant CTU Director, allowed and participated in the suppression of the plaintiff's civil rights by repeatedly continuing the plaintiff's special confinement within the CMU/CTU for 6.2 years sans any procedural protections, denying plaintiff any opportunity to protect his liberty interest that exist outside of the parameters of the CMU/CTU sphere; and

28. Plaintiff maintains that he has/have a liberty interest in avoiding the CMU/CTU created conditions and the exaggerated duration of 6.2 years of special confinement in/at the CMU/CTU. You have propounded that the CMU/CTU confinement is non-punitive because it doesn't effect the length of plaintiff's sentence, punitive it is without a doubt, and there is no federal institution that effects the length of a sentence. However upon placement into either an FCI, USP or administrative segregation, and segregation, the plaintiff is not advised that if he dissagrees with his placement in any of the above named institutions, he can file his administrative remedies to contest such placement. You have been well aware that the plaintiff's confinement into the CMU/CTU significantly altered his conditions of confinement, which rendered plaintiff to suffer under punitive suppression; and

29. The defendant's have infringed upon the plaintiff's first and fifth amendment rights of procedural protection, and have repeatedly refused to correct said infringements. Plaintiff is stating a claim upon which relief may be granted; and

30. Plaintiff is not in any way challenging the FBOP's authority to/of transferring plaintiff, only the process that was only due prior to such transfer to an unregulated proposed program CMU/CTU; and

L. RELIEF NOW DUE:

31. WHEREFORE, the foregoing plaintiff respectfully seeking the following relief, relying upon the Stat utory authorities to wit:

32. 28 USC 1331, an order or judgment in favor of plaintiff answering the federal question. Does the defendants maintain the rights to liquidate the plaintiff's liberty interest by subjecting him to a specialized program without the benefit of procedural due process/protections, to open and scann plaintiff's legal and special mail outside of his presence; and

33. 28 USC 2201, if the answer to the federal question favors the plaintiff, then plaintiff as a matter of right, request from the court a declaration stating such; and

34. As vidication of the violated rights, the plaintiff seeks from the jury: (1) Compensory damages to began from each defendant individually - $1.00 per diem that the plaintiff was confined in the CMU/CTU, ending on Febuary 16, 2017, at a total of $2,250.00 per defendant, aggregating to $7750.00; (2) Punitive damage at $500.00 per diem, that the plaintiff was confined in the CMU/CTU, from each defendant, at a total of $113,500.00 per defendant, aggregating to $340,500.00, at a grand total of $348,250.00, (3) Five (5) Good Conduct Time (GCT) Credited towards the plaintiff's existing current obligation in exchange for every one (1) day that the plaintiff was confined in/at the CMU/CTU; and

35. The plaintiff is advising the court and the defendants that, the plaintiff was detained under two (2) separate and distinct conditions for over 6.2 years. The CTU, which was initially for the limited communications for terrorist inmates, and the complete segregation from the government created liberty interest that's available in the FBOP, sans the CMU/CTU. The plaintiff only claim compensation for the acts setout above, that directly and effectively suspended the plaintiffs guaranteed rights to the 5th and 1st amendment.

36. In accordance with the over exaggerated action perpetrated by the defendants, causing plaintiff to be subjected to the COUNTER TERRORISN UNIT monitoring without a warrant or evidence of a court order. The plaintiff is demanding full and complete purging of all records concerning the plaintiff and the CTU monitoring, to include the purging of plaintiff's name and numerical identifier from all potential no-fly list, terrorist watch rosters, 2 hour watch program that the plaintiff is now under sufferage; and

37. Plaintiff explicitly reserves the right to AMEND this complaint upon discovery of additional CTU/BOP parties in/of interest hereon; and

## CONCLUSION

Plaintiff has stated all facts above under penalty perjury in accord with 28 USC 1746, and all stated with truth, completeness and without misleading intent.

PREPARED this 14TH day of June 2017C.E.

By Dayle R. Harrison
Plaintiff

Encl: Affidavit In Support of Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONTE ROLANDO HARRIS,<br>Plaintiff/Affiant, | CASE No. 16:1012-CKK |
| vs. | AFFIDAVIT IN SUPPORT OF COMPLAINT<br>* * * |
| ANGELA DUNBAR,<br>STEPHEN COPE,<br>CTU DIRECTOR<br>Defendants<br>______________________/ | |

STATE OF INDIANA )
) ss.
COUNTY OF VIGO )

I, Donte Rolonda Harris, hereinafter Affiant, states the following facts which comprises the special actions enforced against affiant. I speak these words in writing under penalty of perjury in accord with 28 USC 1746, and affirm as duly constituted as true, correct, and complete, to wit:

1. That, I was redesignated from a federally regulated penal facility on or about 12/7/10, in route to a then proposed rule program in operation as the CMU, over seen by this CTU;

2. That, on or about 12/8/10, the U.S. Marshals transported the affiant from Victorville CA, via aircraft to Oklahoma City for temporary detainment at the Federal Transfer Center FTC. On or about 12/20/10, the USMS transported the affiant from FTC via aircraft, to Terre Haute Indiana, thereafter delivered over to the FBOP;

3. That, on 12/20/10, the affiant was confined in the former death-row unit, which was converted into the CMU, operating under proposed rules;

4. On or about 12/20/10, the FBOP served the affiant a document entitled NOTICE TO INMATE OF A COMMUNIACTION MANAGEMENT UNIT TRANSFER;

5. Upon the affiants entrapment within the special confines of this CMU, the CTU automatically self-executed against the affiant which resulted in the indefinate suspension of: familial visitation contact, vocation opportunities, rehabilitation opportunities, external community programming; self economic opportunities; speech, 8 phone calls a month predicated upon CTU's prior approval, legal and special mail confidentiality, dietary choices, public information, trust fund/ recreational opportunities;

6. Prior to CMU nomination, the affiant's ordinary incidence of prison life consist of: contact familial visitations, advance economic opportunities (UNICOR), vocational training, public programming opportunities, i.e. job fairs, childrens day, pre-release workshops, trust fund/recreational opportunities, fair speech, legal/special mail confidentialities, self-economic opportunities, association with others, unfettered dietary choices;

7. That the FBOP precluded the affiant from protecting the above at section 6 administrative liberties, prior to its determination of subjecting the affiant to the CMU, which stripped the affiant of these opportunities;

8. On or about 12/20/10, the defendants justifed their decisions to subject the affiant to the CMU/CTU, based on Title 18 USC 2113(d) Title 18 USC 924(c), 18 USC 371, forging signatures on documents intended to defraud the United States, attempted to introduce illegal narcotics into the insitituion;

9. For the first 4 years during affiants special confinement within the CMU/CTU, was bereft of any measure of due process to determine the affiants continued confinement within the CMU, until on or about

1/28/14, the CMU/CTU began to issue their version of due process in the form of an instrument conveying CMU/CTU reasons for sustained confinement within the CMU. And on 6/23/14, 1/27/15, 11/19/15, 6/15/16, the CMU/CTU, hereinafter defendants have published the exact same information originally used to subject the affiant to the CMU to continue the affiants CMU confinment by suggesting that those reasons for placement still exist;

10. The FBOP proposed rules for the Limited Communications for Terrorist Inmates, initially, then resubmitted proposal for the CMU, for the public and the affiant's comment multiple times;

11. In the interest of what I would be subjected to, hereinafter fair notice, the CTU or it's current operating procedures that it is now enjoying was never published in the Code of Federal Regulations CFR, to include but not limited to proposed as a rule;

12. 28 CFR 540.200 sub part J, only legally identifies the CMU;

13. There exist no instrument bearing any official federal identification numbers/alpha-numerical codes, supporting the rules and current operating procedures of the CTU;

14. There exist no implimenting authority guiding the CTU, however, the CTU appears in the FBOP's PS.5214.02, possessing extensive executive authority over the affiant;

15. This is what was not disclosed for public comment or the affiant's: Based on CTU's off-site presence, the defendants orders FBOP staff on-site to, open legal and special mail for digital scanning outside of affiants presence; CTU maintains first right of determining who the affiant can and can't communicate with; censors communication contacts without a valid identifyable reason, and refuses to state who the censoring CTU staff; obsorbed all transferring powers from the warden, out right suppresses speech, thought and creative output;

collects, maintains all of affiants non-terroristic data on its CTU Network Drive;

16. In an effort by the defendants to subject the affiant to such COUNTER TERRORISM UNIT monitoring. They relied on falsified information placed on government documents, entitled FEDERAL BUREAU OF PRISONS IN-TRANSIT DATA FORM, whereby FBOP staff Judith Dreher and Joel Zaragoza, stated in writing that the affiant committed an infraction of Phone Abuse Criminal, when such an incident never existed. However in their focus attention to bolster affiants nomination into the proposed program, out right lied on this particular form, which is hereby reserved for evidence;

17. There exist a Program Statement in conjunction with Title 18 USC 3621(b), hereinafter PS5100.08 Inmate Classification, that was drafted to protect the affiant from arbitrary actions of FBOP staff that may harbor ill-emotions towards prisoners.

18. Within this PS5100.08, for which the defendants have deviated from, exist the Transfer Code 324, the same code that was employed by the defendants to cause the affiants transfer to the CMU. As stated in the PS5100.08, the Transfer Code 324 is a Program Participation designation, whereby the Management Variable must/shall be attached thereto, this Management Variable is under MGTV Code N a Program Participation alpha-code that corresponds with the 324, that allows the FBOP to confine the affiant in a specialized program for up to 18 months, at the discretion of the Regional Director. Irrespective to the limitations of PS5100.08, the defendants elected not to apply for the MGTV from the DSCC. As a direct and proximate result of the deviation, has allowed the defendants to an enjoyable sustainable 6 years of special confinement of the affiant within the CMU under the unordinary, in direct violation of the constitution, to include stating that Prog Stat 5214.02 supercedes all other Prog-State that were designed for affiant's protection.

19. There exist writtent evidence that the affiant is a voluntary participant for the CMU program. Participation: The act of taking part in something, such as a partnership, a crime, or a trial. 2. The right of an employee to receive part of a business's profits; profit sharing. Blks Law 9th Ed.. I never inferred, assented, or verbally agreed to participate into any constructed program, as there exist written evidence that my "Opinion was not solicited."

20. Yet the defendants have employed the 324 Transfer Code, which is a code specifically for Transfers for Training Purposes or Program Participation, i.e. Residential Drug Treatment Program RDAP; Life Connections Program LCP; Special Management Unit SMU, and Sex Offender Programs. Given these facts that are made as policy, there exist no transfer code for a program that was in operation under proposed rules, hereinafter the CMU;

21. The affiant was thus retried for the offense of the U.S. Statutes mentioned above at section 8, by the entity CTU in conjunction with the FBOP's Correctional Programs Divisions CPD. However not given any further time, yet the affiant was adversely reclassified secretly to a level that shall now brand the affiant of being under this so-called Counter Terrorism Unit monitoring, which will no doubt bring about serious alterations upon the affiant release, directly affecting his life, Emphisis Mine;

22. That the affiant has been specially confined under Administrative detention, hereinafter punitive conditions for over 6 years sans any measure of procedural process. Whereby the fraudulent transfer executed under the pretense that the affiant willingly volunteered to participate in the defendants Proposed Rule Program, was solely done to subject the affiant to the CTU in the interest of CTU, for a financial gain. And in return, by result of this action, has now and until the end of the affiants sentence, shall work egregous alterations in the affiant's condition of confinement, credit, character, privacy, and my life. To include that such redesignation from a federally

regulated penal institution to a proposed rule program, whereby the USMS has refused to admit assisting the affiant's transfer which has effectively suspended the affiant's eligibility for important rehabilitive regulated programs, which are readily available to prisoners that are not subjected to the CMU/CTU, where the defendants have stated is a non-punitive program, Emphisis theres;

23. I now declare and reserved the rights to call the following witnesses in the event of Jury Trial: H.A. Rios Jr, Joel Zaragoza, Judith Dreher, USMS staff for the airlift on 12/8/10 and 12/20/10, L. Taitano, Jaculine Cuifo, Evelyn Keller, Katherine Sierveld, Stephen Cope, Clint Swift, Charles Samuels, Thomas Kane, Kathy Hill, G. Burgess, Baskerville, Angela Dunbar, Khristi Treadway, Robert E. Mcfadden, USMS Janice Tate, USMS Gerald M. Auerbach, M Sample, S. Julian, Michael K. Nalley, Malissa Bayless;

I hereby asservate the above under penalty of perjury in accord with Title 28 USC 1746, in this case, from the criminal unconstitutional treatment by the above named parties, who are and shall be represented by the UNITED STATES, I am choosing to use 28 USC 1746(1).

Prepared this 14th day of June 2017.

Respectfully Submitted

By Donte R. Harris L.S
Affiant/Plaintiff

CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is the plaintiff in this matter, and is the proper real person of such age to represent the plaintiff in this case and serve these papers on this 14TH day of June 2017 to the defendants located through counsel at Patricia K. Mcbride 555 4th Street NW Washington D.C. 20001. Papers served are as follows: Amended Complaint and Affidavit, Request for Admissions Set-One, Request for Interrogatories Set-One, Request for Production of Documents. Postage Paid

By Donte R. Harris